UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

IVIS COLÓN VÁZQUEZ, et al.,

    Plaintiffs,

v.

DEPARTMENT OF EDUCATION OF PUERTO RICO, et al.,

    Defendants.

Civil No. 3:14-cv-01644 (JAF)

**OPINION AND ORDER**

**I.**

**Introduction**

Plaintiffs ECC and her mother Ivis Colón Vázquez ("Colón" and collectively, "Plaintiffs") have brought suit against Defendants Department of Education of Puerto Rico ("the DOE") and the Commonwealth of Puerto Rico (collectively, "Defendants") for failing to provide ECC with a free appropriate public education ("FAPE") as required under the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.*, ("IDEA"). This matter is currently before the court to decide Plaintiffs' motion requesting permanent injunctive relief (Docket No. 43). For the following reasons, Plaintiffs' motion for permanent injunctive relief is GRANTED.

All facts and legal analyses preceding this opinion and order appear published at *Colon-Vazquez v. Department of Educ. of Puerto Rico*, --- F.Supp.3d ----, 2014 WL 4701169 (D. Puerto Rico Sept. 23, 2014).

## II.

## **Background**

Colón is the mother of ECC, a minor with ADHD-related health issues associated with Down syndrome. ECC attends school at the Dr. Hiram González School in Bayamón ("the School"). On May 5, 2014, Colón filed an administrative complaint on behalf of ECC against the DOE alleging that the School had not been providing ECC with special needs education as required under IDEA. On June 24, 2014, the Administrative Law Judge ("ALJ") issued a Resolution[1] in favor of Plaintiffs ordering the DOE to: 1) have a special education teacher in place by August 6, 2014; 2) hold an Individualized Educational Plan ("IEP") Team[2] meeting by July 16, 2014 to create ECC's 2014-2015 IEP; 3) grant ECC the compensatory time she was entitled to under her previous IEPs; 4) determine the amount owed to Colón for transportation costs pursuant to the rates certified by the Puerto Rico Public Service Commission and remit payment to Colón within thirty days; 5) ensure that ECC is provided with the diet ordered by the School Food Authority; and 6) provide ECC a Services Assistant not later than August 6, 2014, or activate a provisional remedy to provide ECC with similar assistance. Neither party objected to the ALJ's Resolution.

On August 25, 2014, Colón filed a complaint for preliminary and permanent injunctive relief against the DOE for failing to comply with the Resolution. After a hearing on the preliminary injunction, the court found that Plaintiffs were substantially

---

[1] A certified translation of the Resolution is located at Docket No. 15-4.

[2] In Spanish, the IEP Team is called the "Comité de Programación y Ubicación de Educación Especial" and is often referred to as the COMPU.

likely to succeed on the merits and granted the motion for preliminary injunction. The Defendants did not appeal the preliminary injunction.

Relying on the evidence presented at the preliminary injunction hearing, Colón now moves for a permanent injunction against the DOE. Defendants oppose the motion stating that the DOE has fully complied with the Resolution and, therefore, the matter is moot. On September 2, 2014, the DOE named a Special Education teacher to the resource classroom at the Dr. Hiram González School. An IEP Team meeting was held and ECC's 2014-2015 IEP was completed and provided to the court on October 9, 2014, (Docket No. 47). The IEP satisfactorily reflects compensatory time scheduled for ECC.[3] Colón has been paid her transportation expenses for the 2013-2014 school year. The nutritionist's reports indicate that ECC's nutritional needs are being met. Finally, ECC is currently receiving assistance from a service assistant.

## III.

### **Standard of Review**

Colón moves for summary judgment seeking permanent injunctive relief. In an IDEA case, the traditional rules of summary judgment, as embodied in Federal Rule of Civil Procedure 56, do not apply. The IDEA provides that the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). A

---

[3] The Defendants filed the IEP in the original Spanish language but moved for an extension of time to file a certified English translation. (Docket No. 48.) This court granted the extension and ordered that a certified translation be filed no later than November 8, 2014. (Docket No. 53.) A review of the docket indicates that the Defendants have not yet filed certified translation of ECC's IEP or the minutes as ordered by this court.

district court essentially conducts a bench trial on a stipulated record while giving due deference to the findings of the administrative hearing officer. *Sebastian M. v. King Philip Regional School Dist.*, 685 F.3d 79, 84 -85 (1st Cir. 2012) (citations omitted).

Colón argues that there is no dispute that the DOE failed to provide ECC with the FAPE to which she is entitled under the IDEA and that this court's preliminary injunction should be converted to a permanent injunction. Defendants essentially do not challenge Plaintiffs' success on the merits. Instead, the DOE argues the matter is now moot since all relief sought has been provided and there is no longer a live controversy, thereby depriving this court of jurisdiction.

## IV.

## Law and Analysis

**A.    Mootness**

The DOE's opposition to Colón's motion seeking permanent injunctive relief is that the matter is moot since it has now complied with the Resolution of the ALJ. According to the DOE, there no longer exists a live controversy and the matter is thereby not justiciable.

Before this court can address the merits, it must determine whether it has the authority to decide this question. *Redfern v. Napolitano*, 727 F.3d 77, 83 (1st Cir. 2013) (internal quotation and citation omitted) ("[F]ederal courts lack constitutional authority to decide moot questions[.]"). "[T]he fact that a live controversy existed when the plaintiff brought suit is not enough." *Id.* (citation omitted); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "When a case is moot—that is, when the issues presented are no

longer live or when the parties lack a generally cognizable interest in the outcome—a case or controversy ceases to exist, and dismissal of the action is compulsory." *Id.* at 83-84 (citation omitted).

An exception to the mootness doctrine exists when a dispute is capable of repetition, yet continues to evade review. *Federal Election Commission v. Wisconsin Right to Live, Inc.*, 551 U.S. 449, 462 (2007) (citation omitted). Cessation of allegedly illegal conduct does not necessarily render a case moot. *Nunez-Soto v. Alvarado*, 956 F.2d 1, 3 (1st Cir. 1992); and see *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case...."). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, ——U.S. ——, 133 S.Ct. 721, 727 (2013) (internal quotation marks omitted).

The question here, then, is not whether the precise relief sought at the time Plaintiffs filed the application for an injunction is still available; the question is whether there can be any *effective* relief without continuous court oversight. The court finds that despite having finally complied with the Resolution, a continuing injunction is necessary for Plaintiffs to obtain effective relief.

Plaintiffs allege the DOE violated various provisions of the IDEA. As previously discussed in detail by this court, the 2014-2015 school year is not the first year during which Plaintiffs have been required to pursue legal action against the DOE for ECC to

receive a FAPE. (See Docket No. 33.) In 2012, Colón challenged the DOE's failure to provide ECC with a FAPE and the matter was heard by an administrative hearing officer. After two hearings, the hearing officer issued a resolution requiring the DOE to provide ECC with a teaching assistant, to reimburse Colón for the cost of assistive technology equipment that should have been provided by the DOE, to pay Colón the transportation scholarship owed for the 2010-2011 and 2011-2012 school years, and to train Colón, ECC, and faculty to use the assistive technology, among other relief. The DOE allegedly failed to comply with the 2012 resolution and Colón filed suit. *Colon-Vazquez et al v. Commonwealth of Puerto Rico et al.*, D. Puerto Rico, Case No. 3:13-cv-01175. The 2013 case ended with a partial settlement favorable to Plaintiffs. *Id*. at Docket No. 15.

Despite previous successful administrative complaints and district court settlements, in 2014 Plaintiffs again had to file an administrative complaint against the DOE for its failure to provide ECC with a FAPE as required under the IDEA. The alleged violations in the 2014 complaint are nearly identical to the violations forming the basis of the 2013 matter. Once again, Colón obtained a favorable resolution from the Administrative Law Judge ("ALJ") (Joint Ex. 1, the "Resolution"). Once again, the DOE failed to comply with the Resolution; and, once again, Colón was forced to file suit in this court seeking injunctive relief requiring the DOE to comply with the Resolution, and to award costs, expenses, and attorney's fees as authorized by the IDEA.

Given the history of the parties, this is an instance where the illegal activity is not only capable of repetition, but repetition is reasonably likely to occur. Absent the court entertaining the merits of Plaintiffs' claims, the facts support a conclusion that the DOE

would continue to violate ECC's rights year after year by failing to have an IEP in place at the beginning of each school year and then remedying its failure only after Colón expends time and money fighting the DOE in both administrative hearings and district court filings. Accordingly, the court has jurisdiction to determine the merits of Plaintiffs' claims.

**B.   Injunctive Relief**

The court must evaluate four factors when deciding whether to issue a permanent injunction: "'(1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *CoxCom, Inc. v. Chaffee*, 536 F.3d 101 (1st Cir. 2008) (*quoting eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Esso Standard Oil Co. v. Lopez–Freytes*, 522 F.3d 136, 148 (1st Cir. 2008)). The same four factors are used to evaluate a plaintiff's request for a preliminary injunction.

**1.   Plaintiffs' Claims**

When granting the preliminary injunction, the court found that Plaintiffs demonstrated a likelihood of success on the merits, and that absent the court's grant of relief, "ECC's present and continued lack of an IEP, **along with the DOE's failure to properly implement its IEPs**, will cause her irreparable harm." (Docket No. 33 at 27.) The court found that the injunction was in the best interest of all parties involved, and that the relief sought would promote public interest "by providing ECC with her proper

education, but also by ensuring that the DOE is more responsive to school requests that are designed to fulfill the goals of the IDEA." (Docket No. 33 at p. 28). The court adopts the analysis set forth in section IV of its order for preliminary injunction. (Docket No. 33.)

First, the DOE's only response to Plaintiffs allegations of failure to materially implement the 2013-2014 IEP and failure to create an IEP is that the matter is now moot. The DOE does not dispute that it failed to timely create a 2014-2015 IEP for ECC. The DOE does not dispute that it failed to comply with ECC's 2013-2014 IEP by depriving ECC of special education instruction and failing to provide her with a service assistant[4] as set forth in her IEP. For the reasons set forth in the order for preliminary injunction, the court finds that the DOE failed to comply with material requirements of ECC's 2013-2014 IEP and failed to comply with the IDEA by not timely finalizing an IEP for ECC for the 2014-2015 school year.

Second, the DOE disputes that the Defendants failed to comply with ECC's nutritional requirement. Since the preliminary injunctive order, the DOE has seemingly taken a greater interest in ensuring that the School provides proper nutrition for ECC.

---

[4] The DOE incorrectly interprets the court's intent of the requirement to amend Ms. Alvarado's contract. The intent of the court is not to insert a requirement that ECC be provided a services assistant assigned solely to her. Instead, during the hearing, the court learned that Ms. Alvarado's contract had been informally amended to restrict her services to only ECC. Given the DOE's repeated inability to follow through with its requirements under the IDEA, the court felt compelled to issue prophylactic measures to ensure that Ms. Alvarado remained available to provide services to ECC as agreed. Should the DOE determine that Ms. Alvarado's services extend to an additional child without harming or hindering the services provided to ECC, Ms. Alvarado's contract may be **formally** amended to allow for additional responsibilities. Any such amendment shall be provided to the court, along with a sworn affidavit that the extension of services will not impede compliance with any aspect of this court's order. The court notes that the amended contract does **not** render Ms. Alvarado's services exclusive to ECC as purported by the DOE. The contract only states that, as part of her duties, Ms. Alvarado will participate in the development of various skills of students "including [ECC]". (Docket No. 42-1.) Additionally, the court notes that the DOE has failed to provide an English translation of Ms. Alvarado's amended contract.

The nutritionist's reports show that proper alternatives are currently being offered to ECC when the regular meal does not comply with her special diet. Additionally, the minutes of the October 10, 2014, meeting (Docket No. 83-1) with Lourdes García Santiago – nutritionist at the DOE; Carolyn Rojas – Supervisor Bayamón District III, and Colón, demonstrate that under the court's monitoring, the DOE is finally taking ECC's nutrition seriously. For the reasons set forth in the previous order, the court finds that the nutritionist's reports are a necessary exercise to assure compliance of ECC's dietary plans.

Finally, Plaintiffs and the DOE disagree on the amount owed to Colón for transportation costs.[5] Previously, the court ordered the DOE to "[d]etermine the amount owed to Plaintiff Colón in transportation grants <u>according to the Public Service Commission rates</u> and make payment to Plaintiff Colón for the amount owed **within fifteen (15) calendar days of this Order.**" (Docket No. 33 at 29.) Plaintiffs allege they are entitled to a transportation grant in the amount of $4,546.06 and a transportation scholarship in the amount of $2,932.32. (Docket No. 43-1 at ¶¶ 35 & 40.) The DOE paid Colón transportation grants for ECC's attendance to therapy sessions for the amount of $4,552.65 and transportation scholarship in the amount of $1,565.44, totaling $6,118.09. (Docket No. 58-1 at ¶¶ 35 &41.) Interestingly, Defendants admit that "Plaintiffs' entitlement to the transportation grant for attendance to school during the 2013-2014 academic year is $2,932.32" (Docket No. 58-1 at ¶ 40.), yet paid Plaintiffs $1,565.44, according to its calculations.

---

[5] There is no dispute that Colón is entitled to transportation expenses. (Docket 58-2 at ¶5.)

It is undisputed that Plaintiffs received transportation grants for attendance to therapies for the amount of $4,552.65 and transportation scholarship the amount of $1,565.44 on October 6 and 8, 2014, and that the total amount of both grants was $6,118.09. (Docket No. 58-2 at ¶20, Docket No. 69-1 at ¶20.) Defendants argue that Plaintiffs have been fully compensated for the transportation costs (Docket No. 58 at 4), and Plaintiffs to not address this assertion in their reply brief (Docket No. 69). Because Plaintiffs do not object to the amount calculated by Defendants, the court finds this issue waived and that Plaintiffs have been fully compensated for the 2013-2014 transportation costs.

The court moves now to the issue of the proper rates for calculating future transportation costs. Plaintiff Colón asserts that the costs should be calculated according to the Public Service Commission rates as determined by the Resolution. The DOE asserts that the costs should be calculated in accordance with the rates of the Department of Transportation and Public Works. After a full hearing, the ALJ determined that the rates from the Public Service Commission were the appropriate rates to use. The court previously declined to address the issue since the DOE failed to appeal the Resolution. (Docket No. 33 at 25.) Although the court need not reach the issue because Plaintiffs have currently been paid in full, the record certainly suggests that the lack of an appeal from the DOE would result in the law of this case being that the Public Service Commission rates should be utilized for all future calculations.

### 2. **Permanent Injunction**

The court recognizes that under the direction of court order, the DOE has complied with the underlying Resolution; but, as discussed above, that does not end the court's inquiry. Absent a permanent injunction, the DOE would continue its pattern of ignoring the IDEA, ignoring resolutions by ALJs, and stringing along Plaintiffs at the expense of ECC's education and well-being.

It is hereby **ORDERED** that the Department of Education SHALL:

(A) Prior to the last day of May each year, coordinate and hold an IEP Team meeting at the Bayamón School District to prepare and finalize ECC's IEP for the following school year, and to discuss any other matter related to the special education services ECC requires. The Department of Education shall notify Plaintiff Colón, in writing, ten (10) days in advance of the date of the proposed IEP Team meeting. The prior written notice to Plaintiff Colón shall include a draft of the proposed IEP for ECC and all other notice requirements provided under the IDEA in 20 U.S.C. § 1415(c)(1). All persons set forth in 20 U.S.C.A. § 1414(d)(1)(B) shall be present at the IEP Team meeting. The invitation to the IEP Team meeting shall be extended to ECC's teaching assistant.[6]

In the event that the parties agree to a date for the IEP Team meeting with less than ten (10) days' notice, the DOE shall advise the court of the date of the IEP Team meeting, the method of notice, the method of acceptance by Plaintiff Colón, and identify the persons attending the IEP Team meeting.

The parties shall notify the court **within three (3) days upon completion of the IEP Team meeting**. The notice shall include a list of all persons who attended the meeting, a copy of the final IEP, and the minutes from the IEP Team meeting. The notice shall be restricted to the parties and court only.

---

[6] For reference, it is the understanding of the court that this position is currently held by Ms. Alvarado.

(B) Ensure compliance with the approved special diet for ECC. The DOE shall direct the nutritionist to make unannounced visits to the School during lunchtime <u>at least once a month</u>. The purpose of the lunchtime visits is to observe the School's adherence to special diets and collect information regarding the meals offered to the students and ECC in particular. The nutritionist shall prepare a report of each of the visits and submit the report to the DOE and the School. The report must (1) identify the nutritionist; (2) identify the methods used to obtain the information in the report; and (3) state with particularities the findings by the nutritionist. The DOE shall file a copy of the report with the court **within three (3) days of each visit to the School by the nutritionist**.

(C) Provide a copy of this Order **within twenty-four (24) hours** to:

      1. The Director of Dr. Hiram González School;

      2. The Associate Secretary for Special Education at the DOE;

      3. The Director of the Bayamón Region's Service Center for Special Education;

      4. The Director of The State Agency, Food and Nutrition Services (AESAN);

      5. The Director of the School Food Authority (AEA);

      6. The Director of the Special Education Administration Office;

      7. The Director of the Administration Office at the DOE; and

      8. The Secretary of the DOE.

The DOE and counsel for the DOE shall file a Notice of Service with the court identifying the above listed individuals by name and stating the method of service.

In the event that any of the persons served under this Order is succeeded in his/her position, the DOE shall provide a copy of this Order to the successor **within twenty-four (24) hours of succession**

        and notify the court of the successor's name and the method of service.

        (D) Notify the court, **within three (3) days**, of any material changes at the School that could affect the School's ability to follow ECC's IEP, *e.g.*, teacher resignations or leaves of absences.

In the event of noncompliance with this injunction order, any person or party found to be noncompliant after a hearing on the matter will be held in civil or criminal contempt, including incarceration and any other remedies available to the court.

The court recognizes its limited role in the overall enforcement of the provisions of the IDEA. That is to say, there are many steps that must be taken and hurdles that must be overcome before a district court may intervene and order relief. At the same time, the court is mindful of the fact that ECC will have only one childhood, only one education. As such, there comes a point in time where the administrative regulations and the DOE's repeated failures actually thwart the underlying purpose of the IDEA. The facts surrounding ECC not only meet that standard, but they far exceed it. As has been done in many Title VII cases in which past discrimination has been shown, the court intends to retain jurisdiction over ECC and her educational needs through her time of graduation. The time has come for direct, continuous court oversight, as it is apparent that only the threat of direct contempt from this court can persuade the DOE to fulfill its legal obligations. As such, the above-detailed injunctive relief shall repeat as necessary from year to year until the time of ECC's high-school graduation. At that time, the court will relinquish jurisdiction over ECC and the DOE.

## V.

## **Conclusion**

For the reasons set forth in this Opinion and Order, Plaintiffs' Motion for Permanent Injunction is **GRANTED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 4th day of December, 2014.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
